United States Court of Appeals,

Fifth Circuit.

No. 91–4731

(Summary Calendar).

In the Matter of Sam E. FORD and Marcia S. Ford, d/b/a S.E. Ford Cattle Company, d/b/a Jose Equipment, a/k/a S.E. Ford Oil & Gas, Debtors,

FIRST CITY BEAUMONT, Appellee,

v.

John J. DURKAY, Appellant.

Aug. 6, 1992.

Appeal from the United States District Court for the Eastern District of Texas.

Before POLITZ, Chief Judge, KING and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case began as a proof of claim filed in February 1989 by First City National Bank of Beaumont ("the Bank") in the Chapter 7 bankruptcy proceeding of Sam E. Ford and Marcia Ford. The trustee for the Fords' estate objected to the Bank's claim on the grounds that it is a "contingent claim" and that, pursuant to section 502(c)(1) of Title 11, the Fords' estate is therefore liable only for an estimated portion of the Bank's claim. The bankruptcy court agreed and concluded that the Bank's claim must be estimated pursuant to section 502(c)(1). The Bank appealed to the United States District Court for the Eastern District of Texas, which—finding that the Bank's claim is not contingent and, therefore, that the Fords' liability should not be estimated pursuant to section 502(c)(1)—vacated the bankruptcy court's order and remanded the case back to the bankruptcy court. 125 B.R. 735. The Fords appeal. Finding that the Bank's claim is not contingent, we affirm.

I

On November 14, 1988, the Fords filed a voluntary petition in Bankruptcy under Chapter 7 of Title 11 of the United States Code. The Bank filed a proof of claim against the Fords' estate based

on two notes—a real estate lien note in the original amount of $1,200,000[1] and a promissory note in the original amount of $308,903.67[2]. The Bank's overall claim is for $1,555,489.48—the total amount outstanding on these notes.

On October 4, 1989, the trustee for the Fords' estate filed an objection to the Bank's claim pursuant to section 502(b) of the Bankruptcy Code, asserting that the Bank's claim is a "contingent claim"—that is, a claim in which, pursuant to section 502(c)(1) of Title 11,[3] outstanding liability is divisible by the number of signatures or makers of the underlying notes, and each maker is then responsible only for his or her estimated share.[4] The bankruptcy court conducted a hearing on this objection, determined that the Bank's claim is contingent, and concluded that the claim must be

---

[1]This real estate note was executed by Mr. Ford and others, both individually and as partners of the Jefferson Group—a Texas general partnership. The note provides that each of the note's five co-makers is responsible for the note's entire amount. At the time the Fords filed their bankruptcy petition, the unpaid balance of this note consisted of $1,095,000.00 in principal and $165,405.94 in accrued interest, for a total of $1,260,405.94.

[2]This promissory note was executed by Mr. Ford and J.D. Martin, III. The note provides that Ford and Martin are jointly and severally liable for repayment of its full amount. At the time the Fords filed their bankruptcy petition, the unpaid balance due on this note consisted of $285,495.67 in principal and $9,587.87 in accrued interest, for a total of $295,083.54.

[3]Section 502(c)(1) provides that:

> (c) There shall be estimated for the purposes of allowance under this section—
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

11 U.S.C. § 502(c)(1) (1988). "Estimation" for the purposes of section 502(c)(1) simply means that the bankruptcy court may exercise is discretionary powers to determine the allowability of claims in bankruptcy in accordance with the principles of equity. *See generally In re Corey,* 892 F.2d 829 (9th Cir.1989) (holding that, given highly speculative nature of claims and undue delay that would result in confirmation of proposed plan, court could estimate claims of creditors who voted against proposed reorganization plan), *cert. denied sub nom., Kulalani Ltd. v. Corey,* —— U.S. ——, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); In re Continental Airlines Corp., 64 B.R. 865 (Bankr.S.D.Tex.1986) (discussing broad discretion of bankruptcy court regarding estimation and liquidation pursuant to section 502 of Title 11).

[4]*See, e.g., In re Amatex Corp.,* 110 B.R. 168, 170 (Bankr.E.D.Pa.1990) ("Pursuant to 11 U.S.C. § 502(c)(1), a contingent claimant is said to generally be entitled to file a claim, but the amount of the claim is subject to estimation by the bankruptcy court.") (citations omitted).

estimated pursuant to section 502(c)(1).[5] The trustee does not argue that the Bank's claim is "unliquidated" for purposes of section 502(c)(1).

The Bank appealed the bankruptcy court's final order to federal district court. The district court held that (1) the outstanding debt giving rise to the Bank's claim is not contingent, (2) the bankruptcy court, therefore, had no authority to employ a section 502 estimation of the Bank's claim, and (3) the Bank is entitled to the full amount of its proof of claim. Accordingly, the district court vacated the bankruptcy court's order and remanded the Bank's claim to the bankruptcy court. The Fords appeal.

## II

While bankruptcy does not wash away a creditor's state law rights and remedies, it does alter the creditor's ability to enforce claims. *See In re Brints Cotton Mrkg., Inc.,* 737 F.2d 1338, 1341 (5th Cir.1984) ("[W]hile state law ordinarily determines what claims of creditors are valid and subsisting obligations, a bankruptcy court is entitled ... to determine how and what claims are allowable....") (citation omitted). Accordingly, (a) the validity of the Bank's underlying claim and Mr. Ford's status as co-maker or guarantor is controlled by Texas state law,[6] (b) but whether the Bank is allowed to

---

[5] The bankruptcy court divided the unpaid balance of the real estate lien note—a note with five co-makers (*see supra* note 1)—by five, resulting in an allowed claim of $252,081.19, and divided the promissory note—a note with two co-makers (*see supra* note 2)—in half, resulting in an allowed claim of $147,541.77.

[6] State law is the appropriate law for determining the validity of an underlying claim. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law.... [T]here is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *see also Prudence Realization Corp. v. Geist,* 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293 (1942) ("The court of bankruptcy is a court of equity to which the judicial administration of the bankrupt's estate is committed, ... and it is for that court—*not without appropriate regard for rights acquired under rules of state law* —to define and apply federal law....") (emphasis added) (citations omitted); *In re Chicago, Milwaukee, St. Paul and Pac. R.R.,* 791 F.2d 524, 532 (7th Cir.1986) ("Bankruptcy law provides a federal machinery for enforcing creditors' rights but the rights themselves are created by state law."); *In re Christensen,* 95 B.R. 886, 890 (Bankr.D.N.J.1988) ("State law must be used to decide whether or not a claim exists.... Once the existence of the claim is established, questions concerning whether the claim will be administered through the bankruptcy estate are determined by federal law.") (citations omitted); *In re*

enforce its claim is a matter of federal law and the bankruptcy court's exercise of equitable powers. *See In re Shelter Enterprises,* 98 B.R. 224, 229 ("State substantive law determines the existence of a claim; however, its allowance or disallowance is a matter of federal law and is left to the bankruptcy court's exercise of equitable powers."), *amended on other grounds,* 99 B.R. 668 (Bankr.W.D.Pa.1989) (citations omitted).

## A

We begin by determining the validity of the Bank's claim and Mr. Ford's status under Texas law. Mr. Ford signed the real estate lien note both individually and as a partner of the Jefferson Group.[7] Moreover, the real estate loan explicitly provides that each maker is liable for the entire amount of the note. The Bank's promissory note states on its face that each maker is jointly and severally liable. Under Texas law, this makes Mr. Ford—along with his partners—a "co-maker" jointly and severally liable for the entire amount of the real estate note,[8] and Mr. Ford and Martin are

---

*Continental Airlines Corp.,* 64 B.R. 865, 871 (Bankr.S.D.Tex.1986) ("The legal standards for measuring the value of a bankruptcy claim for contract breach are therefore the same as those which would be applied if the bankruptcy had not occurred."); *In re Skelly,* 38 B.R. 1000, 1001 (D.Del.1984) ("The nature of a creditor's property rights in bankruptcy is defined by state law, not federal law.") (citation omitted).

[7]Because this real estate note does not specify whether Mr. Ford signed it as a co-maker or guarantor, under Texas law he is deemed to have signed as a co-maker. *See* TEX.BUS. & COM.CODE ANN. § 3.118(5) (West 1968) (emphasis added):

> *Unless the instrument otherwise specifies* two or more persons who sign as maker, acceptor or drawer or indorser and as a part of the same transaction *are jointly and severally liable* even though the instrument contains such words as "I promise to pay."

> *See also Retamco, Inc. v. Dixilyn–Field Drilling Co.,* 693 S.W.2d 520, 521 (Tex.App.—Houston [14th Dist.] 1985, no writ) (although note stated that only principal was "maker" and agent signed as agent and also in his individual capacity, holding that agent was individually liable as co-maker since note did not specify that principal and agent were not to be jointly and severally liable).

[8]In fact, pursuant to section 15 of article 6132b of the Texas civil statutes, each of these Jefferson Group partners is jointly and severally liable for all partnership debts. Section 15 states that "all partners are liable jointly and severally for all debts and obligations of the partnership including those under Sections 13 **[Partnership Bound by Partner's Wrongful Act]** and 14 **[Partnership Bound by Partner's Breach of Trust].**" TEX.REV.CIV.STAT.ANN. art. 6132b § 15 (West 1970 & Supp.1992).

each fully liable for the entire amount of their promissory note. *See* TEX.BUS. & COM.CODE ANN. § 3.118(5) (West 1968) (*quoted supra* note 7); *Clark v. Dedina,* 658 S.W.2d 293, 298 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd) ("A co-maker's liability to the payee is joint and several."), *citing Caldwell v. Stevenson,* 567 S.W.2d 278 (Tex.Civ.App.—Austin 1978, no writ); *Dittberner v. Bell,* 558 S.W.2d 527, 534 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.) ("While each signer of a note is liable to the payee for the entire amount, ... generally, as between two signers, each is liable for one-half of the amount.") (citations omitted).

## B

Notwithstanding that state law controls the validity of this claim, what constitutes a "contingent" claim for bankruptcy purposes is a bankruptcy law question. *See Shelter,* 98 B.R. at 229. As acknowledged by the district court, this case is one of first impression—that is, the Bankruptcy Code does not define "contingent claim" and no court has produced a conclusive definition of this term as it is employed in section 502(c)(1) of Title 11.[9] However, we are not completely without guidance: "contingent" has been judicially defined for other sections of the Bankruptcy Code. Specifically, courts have held that

> claims are contingent as to liability if the debt is one which the debtor will be called upon to pay *only upon the occurrence or happening of an extrinsic event* which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to

---

[9]This question was previously posed in another case before a bankruptcy court, but was not resolved; the court requested further briefing, and no follow up opinion was ever issued. *See generally In re Andrews,* 78 B.R. 420, 424–25 (Bankr.E.D.Pa.1987). Specifically, the issue before the *Andrews* court was whether the policies that underlie the definition of contingent claim for section 109(e) and section 303(b)(1) purposes should also apply to section 502(c)(1). The court framed two possibilities—(1) that the narrow interpretation of "contingent" may be due to a policy of restricting the use of those code sections, and that (2) the paucity of cases interpreting section 502 may be due to an unwillingness to classify them as contingent. *See id.* A more obvious explanation for the paucity of case law on this issue is that co-makers who find themselves in bankruptcy are likely to be passed over by creditors seeking to target the co-maker(s) most capable of paying the entire outstanding obligation. Hence, co-makers in bankruptcy may find themselves the subject of indemnification or contribution proceedings from their fellow co-makers who are targeted by creditors for collection. *See infra* note 15 and accompanying text.

the claim occurred.

*In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.1980) (emphasis added), *aff'd per curiam,* 646 F.2d 193 (5th Cir.1981).[10] Our task is to determine whether the district court correctly applied the definition of contingent claim developed and discussed for these other sections of the Bankruptcy Code to section 502(c)(1).[11]

The Fords ask us to split the concept of contingency in two, limit application of the established definition of contingent claim applied by the district court as "contingent as to liability," push that definition aside for the Fords, and reco gnize a second type of contingency—that is, contingency as to amount or collection.[12] If adopted, this approach would result in (1)

---

[10]*See also In re Albano,* 55 B.R. 363, 366 (N.D.Ill.1985) (*quoting All Media* definition); *In re Duty Free Shops Corp.,* 6 B.R. 38, 39 (Bankr.S.D.Fla.1980) ("A contingent claim is one which may arise upon the occurrence of a future event."); COLLIER ON BANKRUPTCY, par. 303.08 at 303–33 (15th ed. 1990) ("When the duty to pay a claim does not rest upon the occurrence of a future event, the claim is not contingent.... A note which is in default ... [is an] example of [a claim] not contingent as to liability.").

[11]The district court held that

> [t]he lack of a definition of "contingent" under the Code may signify Congressional satisfaction with the judicial construction of the term under other Bankruptcy Code sections. Further, the definition of a term in the Code should be consistent throughout the Code, absent any indication in the Code or caselaw that different definitions should be used. For all of the foregoing reasons, this court finds that the [B]ank's claim was not "contingent" and should not have been estimated under section 502(c)(1) of the Bankruptcy Code.

*In re Ford,* 125 B.R. 735, 738 (E.D.Tex.1991).

[12]Specifically, the Fords assert that,

> [t]he Federal District Court, in its memorandum opinion, cites the often-cited definition of "contingent claim" to be found in *In re All Media Properties, Inc.,* 5 B.R. 126 (Bankr.S.D.TX.1980), *aff'd per curiam,* 646 F.2d 193 (5th Cir.1981) ... [*Quoted supra* in text accompanying note 10.]
>
> As the *All Media* court made ... clear, this is a definition of "contingent as to liability", a term found in 11 U.S.C. § 303, the provision of the code which provides for the filing of involuntary bankruptcy petitions by three or more creditors holding claims not contingent as to liability. *Id.*
>
> But the commentators have often recognized that a second type of contingency can exist, contingency as to amount or contingency as to collection.

recharacterizing all joint-obligation promissory note debts as contingent, (2) augmenting the discretion of bankruptcy judges by allowing them to dice up debtors' liability for such notes, and (3) benefiting the other creditors of these debtors—that is, debtors who borrowed on the commitment of joint and several liability and find themselves protected against full liability by filing for bankruptcy—and/or the debtors themselves.[13]

We cannot oblige. Such an approach would strip creditors such as the Bank of the joint-and-several-liability protection they originally bargained for to secure their investment—that is, protection that is likely to have been a necessary precondition for their making such loans.[14] It would

---

Brief of Appellant at 5, *In re Estate of Ford,* No. 91–4731 (5th Cir. filed Dec. 31, 1991). As stated by the district court,

> [o]nly one case has adopted the position taken by the trustee in this case. *In re Elsub Corp.,* 66 B.R. 172 (Bankr.N.J.1987). The *Elsub* case, in the context of section 303(b) of the code, draws a distinction between contingency as to liability and contingency as to payment. No other case cites the *Elsub* reasoning, and because it does not comport with the traditional definition of what a contingent claim is, this court respectfully declines to follow *Elsub.*

*Ford,* 125 B.R. at 738.

[13]As displayed in its most positive light by the Fords,

> The characterization of all joint obligation promissory note debt as contingent would 1) authorize the bankruptcy judge to look behind the paper to the actual loss the note holder is likely to be subjected to;  2) produce a fairer division of the limited assets of the chapter 7 estate among all of the claimants;  3) improve the efficiency and administration of the chapter 7 bankruptcy process;  and 4) produce no unjust consequence to the claimant.

Brief of Appellant, *supra,* at 4. We agree that such a change would enhance the discretion of the bankruptcy judge and benefit the Fords' other creditors, but we do not agree that such a change would "produce no unjust consequences to the claimant." *Id.;  see infra* notes 14–15 and accompanying text.

[14]This was recognized by the district court:

> In addition, from a purely equitable standpoint, it would appear to be unfair to deprive the bank creditor of the joint and several liability protection originally negotiated for on the part of this debtor by estimating the claim at something less than its full amount.

*Ford,* 125 B.R. at 738.

also shift the transaction cost of collecting on such outstanding obligations—a cost which presently enhances the incentive of debtors to undertake considerable joint obligations with caution—away from debtors and onto creditors.[15]  And finally, beyond creating a general disincentive for those who demand the security of joint and several liability against all co-makers before extending credit, such a change would create an incentive for co-makers to file for bankruptcy as a means of shattering their bargained-for liability, thereby avoiding the cost of collecting from one another altogether.

Moreover, the trustee's contention that the amount of the debtor's liability is uncertain focuses on the debtor's right to (and likelihood of) contribution from the other co-makers.  Under Texas law, a co-maker's right to contribution arises only after the co-maker has paid off the note in full. *See Caldwell v. Stevenson,* 567 S.W.2d 278, 280 (Tex.Civ.App.—Austin 1978, no writ);  *see also Dittberner v. Bell,* 558 S.W.2d 527, 534 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.) ("While each signer of a note is liable to the payee for the entire amount, generally, as between two signers, each is liable for one-half of the amount.")  (citations omitted).  Here, the debtor's right to pursue the other co-makers is independent of the creditor's right to payment of the debt, and in no way affects the creditor's right to pursue its claim for the full amount against any co-maker, including the debtor.

We note that section 502(c)(1) is intended to permit estimation of claims the fixing of which might unduly delay the closing of the estate.  This section of the Code serves at least two purposes.  First, it is designed to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions.  By so doing, the trustee can more rapidly determine the payout to each creditor who, in the

---

[15]As the law now stands, creditors such as the Bank are able to collect the entire amount due for jointly-made obligations from any one co-maker holding assets sufficient to settle the entire debt.  Trustees for debtors such as the Fords—debtors who borrowed jointly with others only to find themselves forced to pay more than their proportionate share of that obligation—may then file contribution or indemnification actions to collect from their fellow co-makers.  By making the creditors of such jointly-made debts collect proportionate shares from each individual co-maker in order to realize the entire outstanding amount, the change the Fords propose would shift this collection cost away from the debtors and onto creditors.

meantime, receives no interest on its claim. Second, section 502(c)(1) is designed to promote a fair distribution to creditors through a realistic assessment of uncertain claims. We recognize that our holding today appears to frustrate section 502(c)(1)'s goal of accelerated payout to creditors. It is clear, however, that in cases such as the one before us where a claim, premised upon the debtor's joint and several liability as co-maker of a note, is neither "contingent" nor "unliquidated," estimation pursuant to section 502(c)(1) is simply inappropriate. The Bank, as well as all other creditors of this estate, must await payout on its claim until resolution of the trustee's suits against the other co-makers for contribution. Accordingly, we find that the Bank's claim is not contingent, and we affirm the decision of the district court.

III

For the foregoing reasons, we AFFIRM.

* * * * * *